Argued and submitted May 25, 1994, reversed and remanded in part; otherwise affirmed April 26, 1995

STATE OF OREGON,
*Respondent,*

*v.*

JAMES KENJI KNOX,
*Appellant.*

(CM93-0464; CA A79581)

894 P2d 1185

Kathryn A. Wood argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his convictions for unlawful possession of a controlled substance and unlawful possession of fireworks. ORS 475.992; ORS 480.110; ORS 480.120; ORS 480.990. Defendant assigns error to the trial court's denial of his motion to suppress evidence. We affirm in part and reverse in part.

The facts are not in dispute. Corvallis Police Officer Sharpton saw defendant's pickup truck change lanes without properly signaling. Sharpton pulled in behind defendant's truck to make a traffic stop. He saw defendant extend his right hand toward the front of the passenger seat. Sharpton thought that defendant's movement might indicate an effort to conceal something. Sharpton turned on his overhead lights and defendant pulled over without incident. Defendant got out of his truck and met Sharpton toward the rear of the truck, on the driver's side.

Sharpton recognized defendant. He recalled that defendant had previously been investigated for delivery of controlled substances, although no charges ultimately had been brought against defendant. Sharpton also recalled that another officer had told him that, a number of years earlier, defendant had been a suspect in a homicide, although, again, no charges had been brought against defendant. Finally, Sharpton recalled that defendant had a "reputation" for carrying weapons, and that, the last two times Sharpton had stopped defendant, he had found defendant carrying a knife and a handgun respectively. Sharpton also had received, a year earlier, a teletype from the Oregon State Police warning that, during a traffic stop of defendant, he had been found in possession of firearms.

Because Sharpton felt there was an "immediate danger to [his] safety," he called for backup. While he waited for the other officers to arrive, Sharpton asked defendant if he had any weapons. Defendant replied that he had a handgun locked in his tool box. Sharpton then asked defendant to lift up his shirt. Defendant did as he was asked. Sharpton found no evidence of weapons on defendant's person. When two other officers arrived, Sharpton performed a pat-down of defendant, and found no weapons. Sharpton still felt concern

for his safety, because the windows of the truck were down, and he worried that defendant might have access to weapons in the interior by reaching through the window. As a result, Sharpton searched the interior of the pickup truck. He found a box on the front seat, which appeared to contain clothing. Sharpton lifted up the clothing and found two handguns and a smaller box. He opened the box and found a large illegal firecracker. Sharpton then read defendant his *Miranda* warnings and arrested him. During the entire search, defendant fully cooperated with the officers.

Defendant was placed in the back seat of the other officers' car. During the trip to the police station, one of the officers noticed defendant fidgeting and "bouncing around a lot." When defendant arrived at the station, one of the officers noticed that defendant's right front pants pocket had been pulled inside out. Defendant was searched at the station, but the officers found nothing in his front pants pocket. After defendant had been taken to jail, one of the officers went back to the patrol car and checked the rear seat. Under the seat, he found a zippered pouch, which contained a substance that later tested as cocaine. Defendant said that he knew nothing about the zippered pouch or the cocaine.

Defendant was charged with unlawful possession of fireworks, handguns and controlled substances. Before trial, defendant moved to suppress evidence of the firecracker and the cocaine, because the search of his truck exceeded the permissible scope of a stop for a minor traffic infraction. The state argued that the search of the truck was lawful in the light of Sharpton's legitimate concern for his safety. The trial court denied defendant's motion. Although it expressly found that defendant "was not acting in any unusually angry or strange manner that would give the officer any immediate concern," and that defendant "had never before exhibited any violence towards the police or made threats to them that the officer was aware of," it nevertheless concluded that the search of the truck was reasonable, because of defendant's reputation for and history of carrying weapons. Defendant was convicted of unlawful possession of the fireworks and the cocaine and acquitted on the handgun charge.

Defendant argues that the trial court should have granted his motion to suppress the evidence of the firecracker

and the cocaine. According to defendant, because the search of the truck exceeded the scope of the traffic stop, the evidence of the firecracker should be excluded. And, because the cocaine would not have been discovered but for the discovery of the firecracker, evidence of the cocaine must be excluded as well, as "fruit of the poisonous tree." The state argues, as it did at trial, that the search of the truck was justified by a concern for officer safety. The state also argues, for the first time on appeal, that, even if the search of the truck was impermissible, only the evidence of the firecracker must be excluded. According to the state, because defendant has disclaimed any possession or knowledge of the zippered pouch that contained the cocaine, he cannot be heard to assert the unconstitutionality of its seizure.

■     We first address defendant's argument concerning the search of the truck. ORS 810.410(3) provides, in part:

> "A police officer:
>
> "* * * * *
>
> "(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

In *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), the Supreme Court held that, even if a search exceeds the scope of ORS 810.410(3)(b),[1] it may nevertheless be permissible as a matter of constitutional law if it was necessary to protect the searching officer's safety:

> "[W]e hold that Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*Id.* at 524. In that case, the officers stopped the defendant for a traffic infraction. One of the officers noticed "some kind of a bag" on the floor between the defendant's feet. The officer asked the defendant to pull the bag out into plain view, so he could see it more closely. The defendant reacted very slowly,

---

[1] The Supreme Court construed *former* ORS 484.353(2)(b), which ORS 810.410(3)(b) replaces with identical language.

and, after about ten seconds, the officer pulled out his revolver, ordered the defendant out of the automobile, opened the bag and found several rounds of live ammunition. The officer searched the automobile and found a loaded handgun under the front seat.

The court held that the evidence of the handgun should have been suppressed:

"Although the police are entitled to some leeway in taking protective measures, we must draw the line at some point. The facts articulated by [the officer] in this case fall short of creating a reasonable belief that this defendant posed an immediate threat. In light of defendant's cooperative attitude, his lack of aggressive or threatening behavior and the absence of any apparent weapon, the mere possibility that he might have committed a crime and the presence of what appeared to be a bag are not sufficient."

*Id.* at 527. *See also State v. Hoskinson*, 320 Or 83, 88, 879 P2d 180 (1994).

Both parties in this case argue that *Bates* supports their arguments. Defendant argues that there is no evidence that he presented an immediate threat to anyone. The state argues that, because Sharpton knew that defendant likely had access to weapons, the search of defendant's truck was reasonably necessary to prevent defendant from reaching into the truck and grabbing a weapon.

We agree with defendant. There is nothing in the record to substantiate the trial court's conclusion and the state's argument that Sharpton developed "a reasonable suspicion, based on specific and articulable facts," that defendant might pose "an *immediate threat* of serious physical injury" to anyone. *Bates*, 304 Or at 524. (Emphasis supplied.) According to the trial court—and no one challenges this—defendant "never before exhibited any violence towards the police or made threats to them." The court further found that defendant "was not acting in any unusually angry or strange manner that would give the officer any immediate concern." Those findings are supported by the record.

That defendant had a reputation for carrying weapons, by itself, is insufficient to create a reasonable suspicion that defendant might use them during the otherwise

routine traffic stop. It is not necessarily unlawful to carry weapons; indeed, the state concedes that Sharpton had no reason to believe that defendant ever had unlawfully carried weapons. According to the state, however,

> "that is beside the point. It was the likelihood that defendant had guns readily accessible to him, not the lawfulness of that possession, that gave the officer reason to secure those guns."

Yet the state fails to explain how defendant's mere access to weapons gives rise to a reasonable suspicion that defendant posed an *immediate* threat of using them.

The state mentions defendant's past "involvement" in criminal investigations, yet it again fails to explain how defendant's "involvement" in criminal investigations months, and even years, before the traffic stop led Sharpton reasonably to suspect that he was in *immediate* danger of serious physical harm.

We conclude that, as in *Bates*, the facts articulated by the state fall short of creating a reasonable belief that defendant posed an immediate threat to Sharpton. The officer, therefore, had no basis for searching defendant's truck, and the trial court erred in failing to suppress evidence of the unlawful firecracker that was found in the truck.

We turn to the evidence of the pouch of cocaine. Defendant argues that, because it was unlawful for Sharpton to have searched the truck in the first place, evidence of the cocaine must be suppressed as "fruit of the poisonous tree." The state counters that, because defendant has disclaimed any interest in the cocaine, he cannot be heard to complain about the constitutionality of its seizure. Defendant argues in response that the state failed to preserve its argument.

■ We disagree with defendant's assertion that the state may not assert for the first time on appeal that defendant's failure to assert an interest in the item seized precludes him from challenging the lawfulness of its seizure. We generally may affirm a ruling of the trial court on grounds different from those on which it relied, provided that there is evidence in the record to support the alternate ground. *State v. Nielsen*, 316 Or 611, 628-32, 853 P2d 256 (1993); *State v. Lawson*, 127 Or App 392, 395, 872 P2d 986, *rev den* 320 Or

110 (1994). We may not do so if the parties were not allowed to develop the factual record at trial to address the issue raised for the first time on appeal. *State v. McMurphy*, 291 Or 782, 635 P2d 372 (1981); *State v. Armenta*, 74 Or App 219, 222-23, 702 P2d 1113 (1985). In this case, defendant makes no argument that he was unable to develop adequately the record as to the state's new argument. The record, in fact, stands quite complete: Defendant denies any ownership or knowledge of the cocaine that was found in the officer's back seat.

■ As a matter of law, a defendant must assert a "protected right in the particular item of property" before he or she may assert that it was unconstitutionally seized. *State v. Trevino/Ahumada*, 133 Or App 24, 27-28, 889 P2d 1317 (1995); *State v. MacDonald*, 105 Or App 102, 105-06, 803 P2d 1211 (1990), *rev den* 311 Or 433 (1991). In this case, defendant unequivocally disclaimed any interest in the pouch of cocaine seized from the back seat of the patrol car. The trial court, therefore, did not err in refusing to suppress that evidence.

Conviction for unlawful possession of fireworks reversed and remanded for new trial; otherwise affirmed.