Argued and submitted February 28, reversed and remanded April 24, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# JEFFREY JEREMY JACOBS,
*Appellant.*

01C 42169, 01C 43027; A115011 (Control), A115012
(Cases Consolidated)

67 P3d 408

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for possession and distribution of a controlled substance within 1,000 feet of a school.[1] ORS 475.999. He assigns error to the denial of a motion to suppress evidence that was obtained incident to his arrest. He argues that the search was unlawful because the arresting officers lacked probable cause to believe that he had engaged in any criminal activity. We agree and reverse and remand.

The relevant facts are not in dispute. At approximately 6:00 p.m., Officer Rios and his partner were driving on Chemeketa Street towards Liberty Street in downtown Salem when they observed three men on a sidewalk near a bank parking lot and automated teller machine. The location is within 1,000 feet of a school. The men were "huddled together" and looking around "in a nervous manner" as one of them—defendant—passed what looked like money to one of the others. Rios suspected that a drug transaction was taking place. He regarded the entire "downtown area" as a "high drug traffic area." The suspicious behavior of the three men led him to believe that he was observing "drug transaction 101."

The officers stopped the car and approached the group. Rios said to defendant that "it looks like you guys just did a drug deal." Defendant denied that and said that he had just given one of the others money for the bus. Without asking for consent, Rios proceeded to search defendant and found a plastic bag containing approximately one ounce of marijuana. He then arrested defendant.

Defendant moved to suppress the evidence of the marijuana, arguing that Rios lacked probable cause to arrest. Specifically, defendant argued that, although Rios subjectively may have believed that defendant was engaged in a drug transaction, the belief was not objectively reasonable under the circumstances of this case. The state argued that

---

[1] Defendant also appealed a judgment of conviction entered in a separate case, A115012, which was consolidated with A115011 for the purposes of this appeal. Defendant, however, ultimately challenged only the trial court's ruling in A115011.

the evidence was obtained in a valid search incident to arrest, based on Rios's objectively reasonable subjective belief that it was more likely than not that defendant had engaged in a drug transaction. The trial court agreed with the state and denied the motion.

■ On appeal, defendant again asserts that the search was not lawfully conducted incident to an arrest because the facts of this case are insufficient to establish that it was objectively reasonable for Rios to believe that a crime had been committed.

■ Under the Oregon Constitution, police officers may conduct a search incident to an arrest if the search "relates to a crime which there is probable cause to believe the arrestee has committed." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). To determine whether an officer had probable cause to search and arrest, we examine whether the officer had a subjective belief that defendant had committed a crime and whether that belief was objectively reasonable. *State v. Getzelman*, 178 Or App 591, 595-96, 39 P3d 195, *rev den*, 334 Or 289 (2002). Whether an officer's subjective belief that there is probable cause is objectively reasonable is an issue of law. *State v. McBroom*, 179 Or App 120, 123 n 1, 39 P3d 226, *rev den*, 334 Or 397 (2002). A search may be considered to be "incident to arrest" even though it preceded the arrest. *State v. Anfield*, 313 Or 554, 561, 836 P2d 1337 (1992).

■ In evaluating the objective reasonableness of an officer's belief that a crime has been committed, we examine the totality of the facts and circumstances, including the officer's training and experience. *State v. Williams*, 178 Or App 52, 62, 35 P3d 1088 (2001). Such training and experience by itself does not suffice, however. *See State v. Juarez-Godinez*, 135 Or App 591, 607, 900 P2d 1044 (1995), *aff'd*, 326 Or 1, 942 P2d 772 (1997) ("an experienced police officer's instinct and experience cannot form the entire basis of reasonable suspicion").

In this case, there is no dispute that Rios subjectively believed that he had observed defendant engage in an unlawful drug transaction. The only issue before us is the reasonableness of that belief. The state argues that Rios's belief that he had observed an illegal drug transaction was

objectively reasonable because he had witnessed: (1) an exchange of money; (2) in downtown Salem, a "high drug traffic area"; (3) while the participants were acting very nervously and apparently attempting to hide their activity. In support of its contention that the foregoing are sufficient to establish the objective reasonableness of Rios's belief that a crime had been committed, the state places particular reliance on *State v. Martin*, 327 Or 17, 956 P2d 956 (1998).

In *Martin*, Officer Mahuna observed the defendant standing at a specific corner in Northeast Portland at which drug dealing—in particular, hand-to-hand transactions—occurred "twenty-four hours a day, seven days a week." *Id.* at 20 (internal quotation marks omitted). The frequency of the drug activity was made possible by the fact that an apartment complex located a half-block away served as a kind of "safe haven" for drug dealers. *Id.* (internal quotation marks omitted). The time was approximately 11:20 p.m. As the defendant stood on the corner, Mahuna observed a van drive up and stop about ten feet from where the defendant was standing. The officer saw the passenger in the van gesture to the defendant. The defendant then looked to the left and to the right, stepped into the street, and approached the van. He put his head and one hand into the open passenger window for about three seconds, then turned and walked away. As he walked away, the defendant put his right hand into his rear pants pocket. The van then drove away. So did Mahuna. Two hours later, the officer returned to the corner, finding the defendant still standing there. At that point, Mahuna confronted the defendant, searched him, found evidence of drugs, and arrested him. *Id.*

The defendant moved to suppress the evidence of the drugs, arguing that the officer lacked probable cause to believe that a crime had been committed. The Supreme Court disagreed, citing the fact that the specific corner, located next to a "safe haven" for drug dealers, was a known location for drug activity "on a more-or-less continuous basis." *Id.* at 21. In addition, the court noted, the "defendant was at that location late at night, with no other apparent purpose for being there." *Id.* The court then added:

"Especially significant, in our view, is the fact that defendant was back at the corner two hours after his encounter with the van. Given all that Mahuna already had witnessed and the specific nature of that location as a drive-up drug dispensing location near 'crack central,' it was more likely than not that defendant was dealing drugs at that corner and was, when Mahuna saw him the second time, actually in possession of drugs."

*Id.* at 22.

In this case, there is no evidence that the specific location was a site of continuous, hand-to-hand drug traffic. There is only a vague reference to the entirety of downtown Salem as a "high drug traffic area." There is also no evidence that defendant was observed "late at night, with no other apparent purpose for being there." *Id.* at 21. To the contrary, defendant was observed at around 6:00 p.m. exchanging money in the vicinity of an ATM. *Martin* provides no support for the state's contention that Rios reasonably believed that he had observed an illegal drug transaction.

The state insists that the furtiveness of defendant and his apparent attempts to hide his conduct from view provide the necessary basis for Rios's arrest. Mere furtiveness, however, does not establish probable cause. In *State v. Scarborough*, 103 Or App 231, 796 P2d 394 (1990), for example, the officers observed the defendant scurrying about outside a car. When one of the officers asked for the defendant's driver's license, she looked through her purse and said she did not have a license. The officer asked if she possessed other identification, and she dug through her purse and produced a school identification card. As she looked, the officer shined a flashlight in the direction of her purse, and she pulled it away. On the basis of the defendant's attempt to hide her purse from view, the officer proceeded to search it. We held that the defendant's furtiveness was not sufficient to justify the officer's search:

"[D]efendant's attempts to prevent the officers from looking into her purse do not support a finding of probable cause. Furtive movements may add to a finding of probable cause when they are contemporaneous with the officer's observations of other information consistent with criminal activity."

*Id.* at 234-35; *see also State v. Lane*, 135 Or App 233, 242 n 7, 898 P2d 1358, *rev den*, 322 Or 360 (1995) ("where there is no persuasive evidence that a crime has occurred, actions taken by a defendant to protect his or her constitutionally protected right against warrantless searches may not be used to establish probable cause"); *State v. Lavender*, 93 Or App 361, 364, 762 P2d 1027 (1988) (fact that the defendant attempted to prevent police from observing the contents of her purse did not establish probable cause).

In this case, defendant and his companions were observed exchanging money in the vicinity of an ATM in downtown Salem in the early evening. They may well have looked as if they were trying to hide what they were doing. But furtiveness in the act of engaging in what may nevertheless be entirely lawful conduct does not establish an objectively reasonable basis for a belief that a crime has been committed. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.